NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SAPAN INAMDAR & SPI INVESTMENTS, LLC, | |
| Plaintiffs, | Civil Action No. 25-6045 (RK) (JTQ) |
| v. | **MEMORANDUM ORDER** |
| MASSAGE LUXE INTERNATIONAL, LLC, | |
| Defendant. | |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Defendant Massage Luxe International, LLC's ("MLI" or "Defendant") Motion to Dismiss or in the Alternative Motion to Stay. ("Motion" or "Mot.," ECF No. 16.) Plaintiffs Sapan Inamdar and SPI Investments, LLC ("SPI") (collectively, "Plaintiffs") filed an Opposition, ("Opposition" or "Opp.," ECF No. 17), and Defendant replied, ("Reply," ECF No. 18). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court **GRANTS** Defendant's Motion and **TRANSFERS** this case to the United States District Court for the Eastern District of Missouri.[1]

---

[1] While technically granting the Motion, for the reasons that follow, the Court will exercise its discretion to transfer the action to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a) in lieu of outright dismissal.

## I.    <u>BACKGROUND</u>[2]

Defendant, a Missouri limited liability company, is a franchisor selling the rights to operate spa franchises. (Compl. at 1; *id.* ¶¶ 2–4.)[3] In 2014, Plaintiffs, a New Jersey limited liability company and a resident of New Jersey, entered into an Area Development Agreement ("ADA") with Defendant. (*Id.* at 1; *id.* ¶ 2.) Plaintiffs paid $200,000 for the ADA and agreed to support franchisees in the area covered by the ADA and work to develop new MLI franchises. (*Id.* ¶¶ 2, 6.) In exchange, Plaintiffs were entitled to a portion of the monthly franchise fee paid to MLI by all franchisees in the ADA's territory, Plaintiffs would pay less of a franchise fee to MLI for Plaintiffs' own franchises, and Plaintiffs were given the "exclusive right and license . . . to use [MLI]'s system and MassageLuxe Marks . . . as necessary to recruit franchisees and to train and service franchisees." (*Id.* ¶¶ 7–9 (ellipses in original) (quoting ECF No. 16-2 at 3–4[4]).)

Despite previous assurances that the ADA was a "fungible asset, which MLI could not and would not ever seek to rescind," on May 31, 2022, Defendant sent Plaintiffs a letter terminating the ADA and Plaintiffs' rights thereunder. (*Id.* ¶¶ 4, 10–11.) Defendant thereafter stopped making the contracted payments under the ADA, "divest[ing] [Plaintiffs] of approximately 26 months of disbursements." (*Id.* ¶¶ 12–13.) Plaintiffs have also not been compensated for the "value" of the ADA itself as a "fungible asset." (*Id.* ¶¶ 4, 14.)

As a result of the termination of the ADA, one or both Plaintiffs filed a total of three actions in Missouri state court alleging various contractual claims against Defendant. *See Khangura v.*

---

[2] The Court accepts all well pleaded factual allegations in the Complaint as true for purposes of deciding the pending Motion to Dismiss. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[3] "Compl." refers to Plaintiff's Complaint, which was removed from state court. (*See generally* ECF No. 1.) It is available at pages 9 through 19 of ECF No. 1. Page-number pincites accompanying "Compl." refer to the page numbers of the Complaint itself, not the numbers generated by ECF.

[4] Because the exhibits to the Motion lack consecutive pagination, the Court refers to them using the page numbers generated by ECF.

*MassageLuxe Int'l LLC*, No. 24SL-CC00665 (Mo. Cir. Ct.); *Inamdar v. Massage Luxe Int'l*, No. 24SL-CC02473 (Mo. Cir. Ct.); *Inamdar v. Massage Luxe Int'l*, No. 24SL-CC02474 (Mo. Cir. Ct.); (*see also* Mot. at 16–18 (discussing these actions).) Defendants then responded with a suit of their own against Plaintiffs in Missouri state court. *See Massage Luxe Int'l, LLC v. Inamdar*, No. 25SL-CC01465 (Mo. Cir. Ct.); (*see also* Mot. at 18–19 (discussing this action).)[5] Plaintiffs then filed the instant five-count Complaint in New Jersey Superior Court alleging a violation of the New Jersey Franchise Practices Act ("NJFPA"), N.J. Stat. Ann. § 56:10-1 et seq., as well as claims for negligent misrepresentation, breach of contract, unjust enrichment, and declaratory relief. (*See generally* Compl.) Defendant removed the case to this Court, invoking this Court's diversity jurisdiction. (*See* ECF No. 1.)

Defendant then filed the present Motion, arguing, among other things, that the case should be dismissed because the ADA includes a forum selection clause requiring any action related to the enforcement of the ADA to be brought in Missouri state court or the United States District Court for the Eastern District of Missouri (the "Forum Selection Clause"). (Mot. at 21–28.) On May 8, 2026, the Court held a telephone conference with the parties to put them on notice that it was considering transferring the case to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a). (*See* ECF No. 21.) During that conference, the Court inquired of each party whether they sought to provide additional briefing on the issue of potential transfer on the grounds of Section 1404(a) and *forum non conveniens*. (May 8, 2026 Telephone Conf. Tr. at 4:3–4; 8:20–9:1.) Both parties agreed that no further briefing was necessary.

---

[5] The Court takes judicial notice of these cases. *See Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014).

## II.    LEGAL STANDARD

A party may properly seek enforcement of a forum selection clause that "allows for suit in either a state or federal forum" by moving to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Podesta v. Hanzel*, 684 F. App'x 213, 216 (3d Cir. 2017) (citing *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001) (per curiam)). If the district court grants the motion to dismiss, it may either dismiss the case or transfer it to the appropriate federal forum. *See APFA, Inc. v. UATP Mgmt., LLC*, No. 20-5007, 2021 WL 323474, at *5 (D.N.J. Jan. 31, 2021); *Breslow v. Klein*, No. 17-6912, 2018 WL 3031854, at *1, *13 (D.N.J. June 19, 2018).[6] "[A]s a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss." *Salovaara*, 246 F.3d at 299. Regardless of the substance of the Motion at issue, the Court notes that it may *sua sponte* transfer the case under 28 U.S.C. § 1404(a) for *forum non conveniens*[7] after giving the parties notice and an opportunity to be heard. *See Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011); *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 144 (3d Cir. 1999) ("[F]or transfer to be effective all relevant parties must be apprised that the court is considering a transfer and have the opportunity to voice opposition.").

---

[6] Additionally, courts should "focus 'on the function of the motion, not its caption.'" *Podesta*, 684 F. App'x at 215–16 (quoting *Turner v. Evers*, 726 F.2d 112, 114 (3d Cir. 1984)). Accordingly, the Court "alternately views the motion as one to dismiss pursuant to the *forum non conveniens* doctrine, without reference to Rule 12(b)(6)." *APFA, Inc.*, 2021 WL 323474, at *4 (internal quotation marks omitted).

[7] "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system . . . ." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 64 (2013). To the extent they differ at all, "[d]istrict courts [have] more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 31–32 (1955); *see also, e.g., Cousins ex rel. Est. of Cousins v. Sikorsky Aircraft Corp.*, No. 23-2629, 2025 WL 918435, at *2 (E.D. Pa. Mar. 26, 2025) (noting this "broader discretion" in a case decided after *Atlantic Marine*); *In re Chamber of Com. of U.S.*, 105 F.4th 297, 303 (5th Cir. 2024) (similar). This broader discretion does not alter the Court's analysis.

4

Section 1404(a) allows a court to transfer a case "[f]or the convenience of parties and witnesses [and] in the interest of justice." In deciding whether to transfer a case for *forum non conveniens*, four factors govern a court's analysis:

> (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant "private interest" factors affecting the convenience of the litigants; and (4) relevant "public interest" factors affecting the convenience of the forum.

*Collins v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017) (quoting *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013)). However, as the Supreme Court has explained, in the presence of a valid forum selection clause, a court "must deem the private-interest factors[, including Plaintiff's choice of forum,] to weigh entirely in favor of the preselected forum." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 64 (2013). Therefore, all the Court is "to consider are the second and fourth factors, which *Atlantic Marine* advises will overcome a forum selection clause in only the most 'unusual' and 'extraordinary' circumstances." *Collins*, 874 F.3d at 186 (quoting *Atl. Marine*, 571 U.S. at 62–64). "[T]he party resisting the application of the forum selection clause . . . bears a heavy burden" of showing that the case should not be transferred. *Id.* at 186–87.

## III.    DISCUSSION

The Forum Selection Clause is contained in section 16(B) of the ADA. (*See* ECF No. 16-2 at 23–24.) It provides that:

> If [SPI] institutes any action arising out of or relating to [the ADA], that action must be brought in the Circuit Court of St. Louis County, Missouri or in the United States District Court for the Eastern District of Missouri, and [SPI] irrevocably submits to

the jurisdiction of such court and waives any objection [SPI] may have to either the jurisdiction or venue of such court.[8]

(*Id.* at 23.)

In determining whether a case should be transferred pursuant to a forum selection clause, a court's analysis proceeds in two steps: *first*, the court must consider whether the forum selection clause is enforceable and applicable; and *second*, the court must apply the Section 1404(a) factors. *See Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 97 (3d Cir. 2018); *Collins*, 874 F.3d at 186.

## A.   THE FORUM SELECTION CLAUSE IS ENFORCEABLE

The Court must first determine whether the forum selection clause is enforceable. This is a question of federal law. *See In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018). Under federal law, there is "a strong presumption in favor of enforcing forum-selection clauses." *In re Howmedica Osteonics Corp*, 867 F.3d 390, 403 (3d Cir. 2017) (citing *Atl. Marine*, 571 U.S. at 63, 66). Specifically, forum selection clauses "should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). "A forum selection clause is 'unreasonable' where the [party resisting enforcement] can make a 'strong showing' either that the forum thus selected is 'so

---

[8] The Court may take judicial notice of the Forum Selection Clause because the ADA, while not attached to the Complaint, is "integral" to and "explicitly relied upon in" the Complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (cleaned up); *see Hagen v. John Doe Co.*, No. 16-5050, 2018 WL 1141362, at *3 n.5 (D.N.J. Mar. 2, 2018) ("The Court may consider the agreement containing the forum selection clause at issue in resolving the Company's motion to dismiss because the agreement 'created the relationship between the parties from which this action arose and [is] integral to the allegations pleaded in the Complaint.'" (alteration in original) (quoting *Patel v. Orwest Courtland, Inc.*, No. 12-3005, 2013 WL 486274, at *3 (D.N.J. Feb. 6, 2013))); *cf. CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) (holding that the Court could consider arbitration agreement contained in contracts that were "integral to, and referenced in, the Complaint").

gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court,' or that the clause was procured through 'fraud or overreaching.'" *Id.* (citations and emphasis omitted) (quoting *The Bremen*, 407 U.S. at 15, 18). A party may also resist enforcement by showing "how enforcement of the forum selection clause[] would 'contravene a strong public policy'" of the forum state.[9] *Collins*, 874 F.3d at 181 (quoting *The Bremen*, 407 U.S. at 15); *see In re Exide Techs.*, 544 F.3d 196, 218 n.15 (3d Cir. 2008) ("A forum-selection clause is presumptively valid and will be enforced unless the party objecting to its enforcement demonstrates that enforcement of the clause would violate a strong public policy of the forum.").

Plaintiffs rely exclusively on this last factor, contending that enforcement of the forum selection clause would contravene a strong public policy of New Jersey. (*See* Opp. at 5–7.) New Jersey's public policy in this area is well established. In *Kubis & Perszyk Associates, Inc. v. Sun*

---

[9] The continued validity of this last exception is somewhat dubious in light of the Supreme Court's recent decision in *Great Lakes Insurance SE v. Raiders Retreat Realty Co.*, 601 U.S. 65 (2024). There, the Court explained that it has not "looked to state law in the . . . forum-selection context" and explained that *The Bremen*'s reference to "'a strong public policy of the forum in which the suit is brought'" "was referring to the possibility of a conflict between federal maritime law and a foreign country's law—there, England's. State law was not relevant to the case." *Great Lakes Ins. SE*, 601 U.S. at 78 (citation omitted) (quoting *The Bremen*, 407 U.S. at 15). *Great Lakes Insurance SE*, however, arose in the federal maritime law context, and the Court emphasized that looking to state law "would undermine the fundamental purpose of choice-of-law clauses in *maritime* contracts: uniform and stable rules for maritime actors." *Id.* at 77 (emphasis added). Such uniformity concerns may not require the same result in a diversity case. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988) ("[F]ederal common law developed under admiralty jurisdiction [is] not freely transferable to [the] diversity setting . . . ." (citing *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641–42 (1981))). *But see Martinez v. Bloomberg LP*, 740 F.3d 211, 219 (2d Cir. 2014) ("[T]he Supreme Court has long recognized that . . . 'the orderliness and predictability' promoted by forum selection clauses has value beyond the admiralty context." (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 516 (1974))).

Ultimately, in the absence of clear precedent on the question, the Court considers itself bound by the Third Circuit's instruction that, in a diversity case, courts consider, among other things, whether "enforcement of the forum selection clause[] would 'contravene a strong public policy'" of the forum state, despite the Supreme Court's recent decision. *Collins*, 874 F.3d at 181 (quoting *The Bremen*, 407 U.S. at 15). In any event, the Court's conclusion would be the same regardless of the continued validity of this exception because, for the reasons below, Plaintiffs have not sufficiently "demonstrate[d] that enforcement of the clause would violate a strong public policy" of New Jersey as is required to invoke the exception. *In re Exide Techs.*, 544 F.3d 196, 218 n.15 (3d Cir. 2008).

*Microsystems, Inc.*, the Supreme Court of New Jersey explained that it is the policy of New Jersey, as articulated in the NJFPA, "to level the playing field for New Jersey franchisees and prevent their exploitation by franchisors with superior economic resources." 680 A.2d 618, 628 (N.J. 1996). In light of that policy, the Court warned that "[t]he general enforcement of forum-selection clauses in franchise agreements would frustrate that legislative purpose, and substantially circumvent the public policy underlying the [NJFPA]" and held that "forum-selection clauses in franchise agreements are presumptively invalid." *Id.* at 627–28.

With this in mind, it is important to distinguish New Jersey's public policy from how that public policy is *effectuated and enforced* by New Jersey courts. The former is a basis for non-enforcement of a forum selection clause under federal law, *see Collins*, 874 F.3d at 181, while the latter is of minimal, if any, relevance to the question of enforcement, *see McGraw-Hill*, 909 F.3d at 58.

*Kubis* explains that New Jersey's public policy is "to level the playing field for New Jersey franchisees and prevent their exploitation by franchisors with superior economic resources." *Kubis*, 680 A.2d at 628. Thus, under New Jersey law, forum selection clauses are presumptively invalid "*because* they fundamentally conflict with the basic legislative objectives of protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief against franchisors that violate the [NJFPA]." *Id.* at 626 (emphasis added). The *Kubis* Court's reference to public policy to justify the presumption against enforceability reveals that the presumption is not *itself* the public policy. Instead, the presumption is merely the means chosen by the New Jersey courts of *achieving* that policy.

This Court is not bound by the means of enforcement chosen by the *Kubis* Court. *See McGraw-Hill*, 909 F.3d at 58 ("Federal law controls the question of whether to enforce a forum

selection clause."). Substituting *Kubis*'s presumption against enforcing forum selection clauses for the federal presumption in favor of enforcing such clauses—even through the backdoor of public policy—would essentially transform a quintessential question of federal law into a question of state law. *See id.*; *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988) (holding that Section 1404(a) controlled over "Alabama's categorical policy disfavoring forum-selection clauses"); *cf. Great Lakes Ins. SE v. Raiders Retreat Realty Co.*, 601 U.S. 65, 77 (2024) ("A federal presumption of enforceability would not be much of a presumption if it could be routinely swept aside based on 50 States' public policy determinations."); *Saul v. Seeking Alpha Inc.*, No. 23-1405, 2023 WL 8091852, at *3 n.2 (D.N.J. Nov. 21, 2023) ("The Court also notes that even assuming *arguendo* that *Kubis* was applicable to the instant matter, state law is not dispositive on a motion to transfer venue. Federal law determines whether a forum selection clause is enforceable.").

All this is not to say that *Kubis* carries no weight in the Court's analysis. *Kubis* does articulate New Jersey's public policy of "level[ing] the playing field." *Kubis*, 680 A.2d at 628. The Court will not enforce a forum selection clause if "the party objecting to its enforcement demonstrates that enforcement of the clause would violate" this policy. *In re Exide Techs.*, 544 F.3d at 218 n.15. The problem is that Plaintiffs have made no showing, let alone the requisite "strong showing" to this effect. *Foster*, 933 F.2d at 1219 (quoting *The Bremen*, 407 U.S. at 15). Instead of making any affirmative case for why enforcing the forum selection clause would contravene the policy at the core of *Kubis*, Plaintiffs' entire argument concerns Defendant's alleged failure to overcome the *Kubis* presumption. (*See* Opp. at 5–7.) Because this presumption is inapplicable as a matter of federal law, Plaintiffs' argument fails to overcome the federal

presumption in favor of enforcing the forum selection clause, and the Court concludes that the

Forum Selection Clause is enforceable.[10]

## B.      THE *FORUM NON CONVENIENS* FACTORS SUPPORT TRANSFER

Faced with a valid and applicable mandatory forum selection clause, the Court will apply

the *forum non conveniens* factors as informed by the Supreme Court's decision in *Atlantic

Marine*.[11] *See Collins*, 874 F.3d at 186. That is, the Court considers "the availability of an adequate

alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable"

and "relevant 'public interest' factors affecting the convenience of the forum" in deciding whether

the forum selection clause warrants transfer. *Id.* (quoting *Kisano Trade & Invest Ltd.*, 737 F.3d at

873); *see Atl. Marine*, 571 U.S. at 63–64. These factors "will overcome a forum selection clause

in only the most 'unusual' and 'extraordinary' circumstances." *Collins*, 874 F.3d at 186 (quoting

*Atl. Marine*, 571 U.S. at 62–64). "[T]he party resisting the application of the forum selection

---

[10] For the present analysis to apply, the Forum Selection Clause must be mandatory and the action must fall within its scope. *See Collins*, 874 F.3d at 186; *Newark Ave. Ctr. Assocs., L.P. v. Dong*, No. 25-14474, 2025 WL 3514492, at *2 (D.N.J. Dec. 8, 2025). Here, it is clear that the Forum Selection Clause is mandatory and that the present action falls within the scope of the clause. (*See* ECF No. 16-2 at 23 ("If [SPI] institutes *any action arising out of or relating to [the ADA]*, that action *must* be brought in the Circuit Court of St. Louis County, Missouri or in the United States District Court for the Eastern District of Missouri . . . ." (emphasis added)); Compl. (bringing claims based on the ADA)); *Newark Ave. Ctr. Assocs., L.P.*, 2025 WL 3514492, at *3. Plaintiffs do not dispute these points. (*See* Opp. at 5–7 (arguing only that the Forum Selection Clause is unenforceable)); *see also Collins*, 874 F.3d at 185 n.8 ("There is no dispute in this case that the Agreements' forum selection clauses were mandatory in effect, *requiring* parties to bring the claims in Texas state court, rather than just permissive."); *Robert v. Travers, P.C. v. Tristate Cap. Bank*, No. 25-2252, 2025 WL 3268382, at *2 (D.N.J. Nov. 24, 2025) ("Plaintiff does not contest that the forum selection clause . . . applies to this dispute.").

[11] Due to the Forum Selection Clause, the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64. The availability of a party's witnesses is one such private interest factor. *Id.* at 64, 67. Nonetheless, the Court notes that during the telephone conference where the Court raised the possibility of transfer, the Court observed, and counsel for Plaintiffs acknowledged, that this case potentially involves witnesses located across the country "[a]nd, undoubtedly, there will be . . . witnesses . . . from Missouri." (May 8, 2026 Telephone Conf. Tr. at 9:11–22.)

clause . . . bears a heavy burden" of showing that the case should not be transferred. *Id.* at 186–87. Plaintiffs have not carried this burden.

Regarding the adequate-alternative-forum factor, there is no indication that Defendant is not amenable to process or that Plaintiffs' claims are not cognizable in the Eastern District of Missouri. *See id.* at 186. In fact, Plaintiffs have already sued Defendant in Missouri three times. Accordingly, this factor does not caution against transfer. *See Rehman v. Chadive*, No. 24-341, 2025 WL 101520, at *2 (D.N.J. Jan. 15, 2025) ("India is an adequate alternate forum to adjudicate this case since, as noted, lawsuits involving the same property and parties have been brought in court there.").

Regarding the public interest, the relevant "factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Collins*, 874 F.3d at 186 n.9 (cleaned up) (quoting *Atl. Marine*, 571 U.S. at 62 n.6).

*First*, administrative difficulty and court congestion *strongly* favor transfer. According to the most recent statistics, this District has 1,245 civil cases per judge. The Eastern District of Missouri, on the other hand, has 273 per judge. *See U.S. District Court — Judicial Caseload Profile*, U.S. Cts., 15, 59 (Dec. 31, 2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf; *Saul*, 2023 WL 8091852, at *4 & n.3 (looking to caseload statistics to support transfer); *see also Rave Pak, Inc. v. Bunzl, USA Inc.*, No. 21-295, 2021 WL 3486937, at *7 (D.N.J. Aug. 9, 2021) (noting in granting motion to transfer pursuant to Section 1404(a) that "New Jersey is a district with considerably more volume than the Eastern District of Missouri").

11

*Second*, local interests are essentially in equipoise regarding transfer. While *Kubis* and the NJFPA show that New Jersey has an interest in protecting its franchisees, Missouri also undoubtedly has an interest in regulating its businesses. *See A.O.A. v. Rennert*, 350 F. Supp. 3d 818, 853 (E.D. Mo. 2018) ("Missouri . . . ha[s] [a] cognizable state interest[] in regulating the affairs of [its] corporate citizens."); *Bella & Boise Rock, LLC v. We Rock the Spectrum, LLC*, No. 17-3628, 2018 WL 844398, at *7 (D.N.J. Feb. 13, 2018) (noting in finding the local interest factor neutral that "California has an interest in regulating and protecting its corporations as does New Jersey").

*Third*, familiarity with the applicable law is neutral. As an initial matter, it seems somewhat doubtful that the NJFPA will apply in this case after it is transferred to Missouri. As the Supreme Court held in *Atlantic Marine*, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." 571 U.S. at 64 (noting that the change in choice of law rules "may affect public-interest considerations") This may well result in the application of Missouri law because the ADA has a choice of law provision selecting Missouri law.[12] (*See* ECF No. 16-2 at 23); *Travis v. State Farm Mut. Auto. Ins. Co.*, 581 F. Supp. 3d 1174, 1179–80 (E.D. Mo. 2022) (noting that Missouri courts generally enforce choice of law clauses and that when they do not, they apply Missouri substantive law). Moreover, even if the NJFPA

---

[12] Unlike the enforceability of a forum selection clause, the enforceability of a choice of law clause is governed by state law when a federal court sits in diversity. *See Homa v. Am. Express Co.*, 558 F.3d 225, 227 (3d Cir. 2009). Absent transfer pursuant to *Atlantic Marine*, New Jersey's choice of law rules would apply, and the ADA's choice of law provision would likely be deemed unenforceable. *See HP Holding LLC v. Red Roof Inns, Inc.*, No. 23-20907, 2024 WL 2720463, at *4 (D.N.J. May 28, 2024) ("New Jersey courts . . . have consistently applied the law of the state in which a franchisee has its principal place of business, notwithstanding a contractual choice-of-law provision."). However, following such transfer, Missouri choice of law rules would govern, and those rules may select Missouri substantive law. *See Travis v. State Farm Mut. Auto. Ins. Co.*, 581 F. Supp. 3d 1174, 1179–80 (E.D. Mo. 2022).

continues to apply, that still would not preclude transfer. As the New Jersey Supreme Court explained in *Kubis*, "[w]e have no doubt that courts in other states, both state and federal, would faithfully and fairly apply the [NJFPA] to suits within their jurisdiction involving issues controlled by that statute." 680 A.2d at 628.

In sum, the only public interest factor that meaningfully tilts one way or the other is administrative difficulty and court congestion, and that factor strongly supports transfer. Ultimately, Plaintiffs have fallen well short of carrying their "heavy burden" of demonstrating that "'unusual' and 'extraordinary' circumstances" are here that overcome the forum selection clause. *Collins*, 874 F.3d at 186–87 (quoting *Atl. Marine*, 571 U.S. at 62–64). Therefore, after careful consideration, the Court finds that "the convenience of parties and witnesses [and] interest of justice" support transfer. 28 U.S.C. § 1404(a). Accordingly, Defendant's Motion is **GRANTED**,[13] but the case is transferred to the Eastern District of Missouri instead of being dismissed. *See APFA, Inc.*, 2021 WL 323474, at *5; *Breslow*, 2018 WL 3031854, at *13.

**THEREFORE**, it is on this 26th day of May, 2026,

**ORDERED** that Defendant Massage Luxe International, LLC's Motion to Dismiss or in the Alternative Motion to Stay (ECF No. 16) is **GRANTED**, and it is further

**ORDERED** that, instead of being dismissed, this action is **TRANSFERRED** to the United States District Court for the Eastern District of Missouri, and it is further

**ORDERED** that the Clerk of the Court **TERMINATE** the Motion pending at ECF No. 16, and it is further

---

[13] Because the Court decides the Motion on the basis of the Forum Selection Clause, it need not reach Defendant's alternative grounds for dismissal. (*See* Mot. at 28–46.) Of course, Defendant is free to reraise these arguments in the transferee court. *See Brainbuilders LLC v. EmblemHealth, Inc.*, No. 20-12703, 2021 WL 2025004, at *7 (D.N.J. May 21, 2021).

**ORDERED** that the Clerk of the Court **CLOSE** this matter.

---

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**